PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WHITE TAIL PARK, INCORPORATED;
AMERICAN ASSOCIATION FOR NUDE
RECREATION-EASTERN REGION,
INCORPORATED; K.H.; D.H., on
behalf of themselves and their
minor children, I.P. and B.P.; S.B.;
J.B., on behalf of themselves and
their minor child, C.B.; T.S.; J.S.,
on behalf of themselves and their
minor children, T.J.S. and M.S.,
                    *Plaintiffs-Appellants,*

            v.

ROBERT B. STROUBE, in his official
capacity as Virginia State Health
Commissioner,
                    *Defendant-Appellee.*

No. 04-2002

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-04-470)

Argued: March 16, 2005

Decided: July 5, 2005

Before TRAXLER and DUNCAN, Circuit Judges, and
Frederick P. STAMP, Jr., United States District Judge
for the Northern District of West Virginia,
sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Traxler wrote the opinion, in which Judge Duncan and Judge Stamp joined.

---

## COUNSEL

**ARGUED:** Rebecca Kim Glenberg, AMERICAN CIVIL LIBER-TIES UNION FOUNDATION OF VIRGINIA, Richmond, Virginia, for Appellants. John Kenneth Byrum, Jr., Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Frank M. Feibelman, Cooperating Attorney for the ACLU of Virginia, Richmond, Virginia, for Appellants. Jerry W. Kilgore, Attorney General of Virginia, William E. Thro, State Solicitor General, Maureen Riley Matsen, Deputy State Solicitor General, Courtney M. Malveaux, Associate State Solicitor General, D. Nelson Daniel, Assistant Attorney General, Richmond, Virginia, for Appellee.

---

## OPINION

TRAXLER, Circuit Judge:

The American Association for Nude Recreation-Eastern Region, Inc. ("AANR-East"), White Tail Park, Inc. ("White Tail"), and six individual plaintiffs appeal from the order of the district court dismissing their complaint for lack of standing. We affirm in part, reverse in part, and remand for further proceedings.

### I.

AANR-East is one of several regional organizations affiliated with the American Association for Nude Recreation, a national social nudism organization. In June 2003, AANR-East opened a week-long juvenile nudist camp at a licensed nudist campground ("White Tail Park") operated by White Tail near Ivor, Virginia. AANR-East leased the 45-acre campground that ordinarily attracts about 1000 weekend visitors who come to engage in nude recreation and interact with

other individuals and families who practice social nudism. White Tail Park also serves as home for a small number of permanent residents.

Modeled after juvenile nudist summer camps operated annually in Arizona and Florida by other regional divisions of AANR, the 2003 AANR-East summer camp offered two programs: a "Youth Camp" for children 11 to 15 years old, and a "Leadership Academy" for children 15 to 18 years old. J.A. 16. The camp agenda included traditional activities such as arts and crafts, campfire sing-alongs, swimming, and sports. The camp also included an educational component designed to teach the values associated with social nudism through topics such as "Nudity and the Law," "Overcoming the Clothing Experience," "Puberty Rights Versus Puberty Wrongs," and "Nudism and Faith." J.A. 57. A total of 32 campers attended the 2003 summer camp at White Tail Park. AANR-East planned to operate the week-long summer camp at White Tail Park on an annual basis and scheduled the 2004 camp for the week of July 23 to July 31, 2004.

Virginia law requires any person who owns or operates a summer camp or campground facility in Virginia to be licensed by the Food and Environmental Services Division of the Virginia Department of Health ("VDH"). *See* Va. Code § 35.1-18. Prior to the scheduled start of AANR-East's 2004 youth camp, the Virginia General Assembly amended the statute governing the licensing of summer camps specifically to address youth nudist camps. The amended statute requires a parent, grandparent or guardian to accompany any juvenile who attends a nudist summer camp:

> The Board shall not issue a license to the owner or lessee of any hotel, summer camp or campground in this Commonwealth that maintains, or conducts as any part of its activities, a nudist camp for juveniles. A "nudist camp for juveniles" is defined to be a hotel, summer camp or campground that is attended by openly nude juveniles whose parent, grandparent, or legal guardian *is not also registered for and present with the juvenile at the same camp*.

Va. Code § 35.1-18 (emphasis added). Although this language purports to impose a categorical ban on the operation of "nudist camps for juveniles" in Virginia, it in fact permits the licensing of a youth

nudist camp as long as the camp requires a parent or guardian to register and to be "present with the juvenile" during camp. *Id.*

In June 2004, Robert Roche, president of AANR-East, applied for a permit to operate the youth nudist camp scheduled for late July 2004.[1] Like all applicants for permits under section 35.1-18 at that time, Roche was required to sign and submit with the application an acknowledgment that Virginia law banned the operation of nudist camps for juveniles as defined by Virginia Code § 35.1-18. Roche signed the acknowledgment and also orally assured Gary Hagy, Director of the Food and Environmental Services Division of the VDH, that AANR-East intended to comply with the new restrictions imposed by the General Assembly. VDH issued a summer camp permit to AANR-East, licensing it to operate a summer camp at White Tail Park from July 23, 2004 to July 31, 2004.

As the application process was proceeding, AANR-East, White Tail, and three sets of parents, suing anonymously on behalf of themselves and their children, filed this action against Robert B. Stroube, Commissioner of the VDH. The complaint asserts two claims: (1) that section 35.1-18 of the Virginia Code violates plaintiffs' right to privacy and to control the education and rearing of their children under the Fourteenth Amendment; and (2) that section 35.1-18 violates plaintiffs' First Amendment right to free association. Plaintiffs requested an order declaring section 35.1-18 of the Virginia Code unconstitutional, preliminary and permanent injunctive relief, and attorneys fees pursuant to 42 U.S.C.A. § 1988. Plaintiffs also filed a motion for a preliminary injunction together with the complaint. The Commissioner filed a motion to dismiss the action, arguing that plaintiffs lacked standing to bring suit.

On July 15, the district court denied the preliminary injunction after a hearing. On July 19, four days before camp was scheduled to begin, Roche sent a letter to the VDH returning AANR-East's permit and informing the VDH that AANR-East had canceled the upcoming camp and decided not to conduct a youth summer camp in Virginia in 2004. Roche enclosed a press release issued by AANR-East indicating that, in light of the district court's denial of the preliminary

---

[1]Roche also serves as president of White Tail.

injunction, AANR-East was forced to cancel camp because the new Virginia statutory requirements "place[d] an undue burden on too many parents who had planned to send their children" to the camp. J.A. 103. According to AANR-East, twenty-four campers who would have otherwise attended the camp were precluded from doing so because no parent, grandparent, or guardian was able to accompany them to White Tail Park during the week scheduled for camp. Only eleven campers would have been able to attend in light of the new restrictions. Ultimately, however, AANR-East was able to operate its youth nudist camp by relocating to a neighboring state.

On August 10, 2004, the district court held a hearing on the Commissioner's motion to dismiss for lack of standing. At the hearing, the Commissioner argued that the case had become moot because AANR-East surrendered its permit after failing to secure a preliminary injunction and then successfully moved the camp to another state. The district court agreed:

> Since the permit was surrendered, there would be no camp, so the [anonymous parents] could not maintain that the code section prevented them from sending their children to the summer camp. There was no camp to attend. Accordingly, the case is no longer justiciable. The [individual] plaintiffs no longer satisfy the case or controversy requirement.

J.A. 114. The district court concluded, in turn, that if the individual plaintiffs no longer satisfied the case or controversy requirement, then "neither does White Tail . . . or AANR-East because their 'organizational standing' derives from that of the anonymous plaintiffs." J.A. 114.

The district court explained further that the organizational plaintiffs, AANR-East and White Tail, lacked standing to assert their own constitutional rights, if any, because they were unable to establish actual or imminent injury resulting from the statutory requirement that all campers be accompanied by a parent or guardian. Accordingly, the district court granted the Commissioner's motion to dismiss for lack of standing.[2]

---

[2]In view of this ruling, the district court concluded that the Commissioner's motion to dismiss the anonymous plaintiffs, the plaintiffs' motion for leave to use pseudonyms, and plaintiffs' motion for a protective order were moot. These rulings are not at issue on appeal.

II.

We turn first to the question of mootness. The doctrine of mootness flows from the constitutional limitation of federal court jurisdiction to actual "Cases" or "Controversies." U.S. Const., art. III, § 2, cl. 1. "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). Thus, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

With respect to AANR-East and White Tail, we cannot agree that the claims alleged in the complaint are moot. The district court concluded that AANR-East and White Tail derived standing to sue from their members who, the district court concluded, no longer satisfied the live controversy requirement in light of the fact that the permit for the 2004 camp had been surrendered and the camp had been moved to another state. This conclusion, however, fails to recognize that AANR-East and White Tail brought certain claims, as discussed below, in their own right and not derivative of or on behalf of their members. Moreover, these claims were not mooted when AANR-East surrendered its permit for the 2004 summer camp. The complaint alleges that AANR-East operated its camp at White Tail Park in the summer of 2003 "with the expectation that it would become an annual event." J.A. 9. And, although AANR-East relocated its camp in 2004, it has already applied for a permit to operate the camp at White Tail Park in the summer of 2005. In fact, it applied for the permit prior to the August 10, 2004, hearing on the Commissioner's motion to dismiss. Accordingly, in our view, the claims advanced by AANR-East and White Tail continue to present a live controversy.

As for the anonymous plaintiffs, however, we agree with the district court that their claims are moot. The anonymous plaintiffs are parents who intended to send their children to camp at White Tail Park during the last week in July 2004. They contend that the new requirements of the Virginia statute imposed an unconstitutional burden on their right to guide the upbringing of their children and their children's right to privacy and expressive association. There is noth-

ing in the record, however, indicating that these particular families intended to register their children for any summer camp beyond that scheduled in July 2004. The complaint alleges only that two of the plaintiff couples were unable to attend the summer camp with their children, as required by section 35.1-18 of the Virginia Code, during the week of July 24 through July 31, 2004. The third couple was able to arrange their schedule so that they could accompany their children, but sought to enjoin the application of the amended statute because they believed the camp "experience would be more valuable if [the children] were able to spend the week away from us." J.A. 20-21. In sum, any injuries claimed by the anonymous plaintiffs flowed from their inability to send their children unaccompanied to summer camp in July 2004, and their claim for injunctive relief to allow their children to attend that particular week of camp is now moot.

## III.

### A.

Having concluded that the claims of AANR-East and White Tail are not moot, we next consider whether these organizations have standing to raise them in federal court. Like the doctrine of mootness, the standing limitation is derived from the cases or controversies requirement of Article III. "A justiciable case or controversy requires a 'plaintiff [who] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Planned Parenthood of South Carolina v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004) (alteration in original) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)), *cert. denied*, 125 S. Ct. 1036 (2005). To satisfy the constitutional standing requirement, a plaintiff must provide evidence to support the conclusion that: (1) "the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

The standing requirement must be satisfied by individual and organizational plaintiffs alike. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). An organizational plaintiff may establish standing to bring suit on its own behalf when it seeks redress for an injury suffered by the organization itself. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (explaining that an organizational plaintiff may have standing to sue on its own behalf "to vindicate whatever rights and immunities the association itself may enjoy"). Additionally, an organizational plaintiff may establish "associational standing" to bring an action in federal court "on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). In concluding that the constitutional standing requirements were not met, the district court explained that AANR-East and White Tail derived "their 'organizational standing' . . . from [the standing] of the [individual] anonymous plaintiffs." J.A. 114. In turn, based on its conclusion that the claims asserted by the individual plaintiffs were moot and no longer presented a justiciable controversy, the court held that the organizational plaintiffs lacked associational standing to bring claims on behalf of the individual plaintiffs.[3] Finally, the district court opined that "even if [White Tail] and AANR-East have a first amendment right to disseminate their message of social nudism to children in a structured summer camp program, the minimal requirement that a parent, grandparent or legal guardian be at the park does not prevent" White Tail or AANR-East from exercising this right. J.A. 115. Upon those two

---

[3]We have generally labeled an organization's standing to bring a claim on behalf of its members "associational standing." *See, e.g.*, *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003); *Friends for Ferrell Parkway*, 282 F.3d at 320. However, in at least one panel decision, we have used the term "organizational standing" interchangeably with "associational standing." *See Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287, 1290 (4th Cir. 1992). Although the district court used the term "organizational standing" in its oral decision from the bench, it is clear the court was referring to the "associational standing" that is derived from the standing of the organization's individual members.

bases, the district court granted the Commissioner's motion to dismiss the claims of AANR-East and White Tail for lack of standing.

A district court's dismissal for lack of standing, and therefore lack of jurisdiction, is a legal ruling that we review *de novo. See Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424, 428 (4th Cir. 2004), *cert. denied*, 125 S. Ct. 1328 (2005). AANR-East and White Tail bear the burden of establishing the three fundamental standing elements. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). When a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, as the Commissioner did in this case, the district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Because the standing elements are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (explaining that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," but in response to a summary judgment motion, "the plaintiff can no longer rest on such 'mere allegations,' [and] must 'set forth' by affidavit or other evidence 'specific facts'" establishing standing (quoting Fed. R. Civ. P. 56(e)).

B.

On appeal, White Tail and AANR-East do not claim to have associational standing, given that neither organization is pursuing any claims on behalf of the individual plaintiffs. Instead, AANR-East and White Tail contend that they have asserted *injuries to the organizations themselves* that are separate and distinct from the injuries alleged by the individual plaintiffs on behalf of their children and themselves. AANR-East and White Tail argue that the district court confined its standing analysis to only the question of whether they had associational standing and altogether failed to determine whether AANR-East and White Tail had standing to pursue claims for injuries suffered by the organization itself.

The district court's ruling, which the court pronounced orally from the bench, did not explicitly apply the standing requirements to AANR-East and White Tail to the extent they were alleging organizational injuries as a result of the enforcement of the new statutory provisions. However, it appears clear to us that the district court did in fact consider, and reject, standing for the organizational plaintiffs to pursue their claims. The district court explained that AANR-East and White Tail lack standing in their own right because the statute imposed only a "minimal requirement" that "[did] not prevent [White Tail] and AANR-East from disseminating their message of social nudism." J.A. 115. Implicit in the district court's explanation appears to be the conclusion that AANR-East and White Tail both failed to satisfy the first *Lujan* requirement for standing under Article III — that the plaintiff demonstrate the existence of an injury in fact. *See Lujan*, 504 U.S. at 560.[4] Regardless of whether the district court technically addressed this issue, this court is obliged to address any standing issue that arises, even if it was never presented to the district court. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

## C.

We first consider whether AANR-East has standing to raise its claims. The gravamen of the standing issue for AANR-East is whether it has sufficiently demonstrated that it "ha[s] suffered an 'injury in fact.'" *See Lujan*, 504 U.S. at 560. The parties, like the district court, focused primarily on this particular element of standing. Indeed, there is sufficient evidence, including Roche's affidavits, to establish that the injuries suffered by AANR-East, if any at all, are "fairly . . . trace[able] to the challenged action of the defendant" instead of "the independent action of some third party not before the court," *id.* (internal quotation marks omitted) (alteration in original), and that any injury will likely "be redressed by a favorable decision," *id.* at 561 (internal quotation marks omitted).

---

[4]The context of the district court's statement, which followed a discussion of the individual plaintiffs' inability to establish injury in fact, supports this view.

Thus, we turn to the injury in fact requirement. For AANR-East to establish this element, it must adduce facts demonstrating that it suffered "an invasion of a legally protected interest," *id.* at 560, that was "concrete, particularized, and not conjectural or hypothetical." *Pye v. United States*, 269 F.3d 459, 467 (4th Cir. 2001). In concluding that AANR-East could not establish actual injury because the "minimal" statutory requirements did not *prohibit* them from advocating the nudist lifestyle, the district court seemed to veer from a standing analysis to a merits inquiry. By focusing on the intrusiveness of the statute and the extent to which it impaired the ability of AANR-East to carry its message to summer camp attendees, the court was effectively making a merits determination. *See Chesapeake B & M, Inc. v. Harford County, Md.*, 58 F.3d 1005, 1010 (4th Cir. 1995) (en banc) ("[R]estrictions that impose an incidental burden on speech" will be upheld if they are "narrowly drawn to serve a substantial governmental interest and . . . allow for ample alternative avenues of communication.").

The standing doctrine, of course, depends not upon the merits, *see Warth*, 422 U.S. at 500, but on "whether the plaintiff is the proper party to bring [the] suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *see Libertad v. Welch*, 53 F.3d 428, 437 n.5 (1st Cir. 1995) ("An analysis of a plaintiff's standing focuses not on the claim itself, but on the party bringing the challenge; whether a plaintiff's complaint could survive on its merits is irrelevant to the standing inquiry."). If a plaintiff's legally protected interest hinged on whether a given claim could succeed on the merits, then "every unsuccessful plaintiff will have lacked standing in the first place." *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997). Even though a plaintiff's standing cannot be examined without reference to the "nature and source of the claim asserted," *Warth*, 422 U.S. at 500, our ultimate aim is to determine whether plaintiff has a sufficiently "personal stake" in the lawsuit to justify the invocation of federal court jurisdiction, *see Simon*, 426 U.S. at 38.

AANR-East contends that the statute impairs its ability to disseminate the "values related to social nudism in a structured camp environment." Brief of Appellants at 15. One of the purposes of the camp, according to AANR-East, is to "educate nudist youth and inculcate them with the values and traditions that are unique to the culture and

history of the . . . American social nudist movement." J.A. 57. AANR-East contends that the amended statute will reduce the size of the camp every year because not all would-be campers have parents or guardians who are available to register and attend a week of camp during the summer, as evidenced by the fact that 24 campers who would have otherwise attended camp by themselves in June 2004 were unable to do so because of their parents' inability or unwillingness to attend. AANR-East contends that the statute encroached on its First Amendment right by reducing the size of the audience for its message of social nudism and will continue to do so as long as it is enforced. We think this is sufficient for purposes of standing. A regulation that reduces the size of a speaker's audience can constitute an invasion of a legally protected interest. *See Meyer v. Grant*, 486 U.S. 414, 422-23 (1988). Likewise, "[t]he denial of a particular opportunity to express one's views" may create a cognizable claim despite the fact that "other venues and opportunities" are available. *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2nd Cir. 1998).

Although the First Amendment challenge to section 35.1-18 mounted by AANR-East may ultimately prove unsuccessful—we express no opinion on the merits here—-AANR-East is an appropriate party to raise this challenge. In fact, it would be difficult to think of a more appropriate plaintiff than AANR-East, which is surely one of the few organizations in Virginia, if not the only one, affected by the amendments to section 35.1-18, which were enacted following the opening of AANR-East's first juvenile camp.[5]

D.

We turn, briefly, to White Tail. There are substantial common ties between AANR-East and White Tail. Roche runs each organization, and both organizations share a connection to the practice of social nudism. However, AANR-East and White Tail are separate entities, and we find nothing in Roche's affidavits or elsewhere in the record that explains White Tail's interest in the education of juvenile sum-

---

[5]We note that the complaint includes a claim under the Fourteenth Amendment, alleging that the plaintiffs' "right to privacy" was violated by the statute. AANR-East has not identified its liberty interest at stake or developed this claim further.

mer campers, or even suggests that White Tail has one. Roche's affidavits clearly indicate that AANR-East designs the camps and conducts them; establishes camp policies; and selects camp staff who perform the actual teaching at camp. Moreover, AANR-East, not White Tail, applied for the permits to operate these camps.

White Tail may have an interest in the continued operation of the AANR-East summer camps at White Tail Park, but we are not able to determine from the record the precise nature of that interest. To the extent White Tail claims a First Amendment interest, we have been offered no supporting facts. To the extent White Tail argues the violation of its "right to privacy" or a liberty interest under the Fourteenth Amendment, it has failed to develop that argument.

Accordingly, we affirm the order of the district court dismissing White Tail's claims for lack of standing.

## IV.

For the reasons stated above, we reverse the order dismissing the First Amendment claim brought by AANR-East for lack of standing and remand for further proceedings. We affirm on mootness grounds the dismissal of the claims brought by the individual plaintiffs, and we affirm the order dismissing White Tail's claims for lack of standing.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*