SALT INSTITUTE; Chamber of Commerce of the United States of America, Plaintiffs–Appellants,

v.

Michael O. LEAVITT, Secretary of Health and Human Services, Defendant–Appellee.

Grocery Manufacturers of America; National Association of Home Builders, Amici Supporting Appellants.

No. 05–1097.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 2006.

Decided March 6, 2006.

**ARGUED:** Catherine E. Stetson, Hogan & Hartson, L.L.P., Washington, D.C., for Appellants. Alisa Beth Klein, United States Department of Justice, Civil Division, Appellate Section, Washington, D.C., for Appellee. **ON BRIEF:** Stephen A. Bokat, Robert Costagliola, National Chamber Litigation Center, Inc., Washington, D.C.; Reed Rubinstein, Mark E. Solomons, Greenberg Traurig, Washington, D.C., for Appellants. Peter D. Keisler,

Assistant Attorney General, Paul J. McNulty, United States Attorney, Mark B. Stern, United States Department of Justice, Civil Division, Appellate Section, Washington, D.C., for Appellee. Richard S. Silverman, Gregory G. Garre, Dirk C. Phillips, Hogan & Hartson, L.L.P., Washington, D.C., for Amicus Curiae Grocery Manufacturers of America Supporting Appellants. Thomas J. Ward, National Association of Home Builders, Washington, D.C.; Karl S. Bourdeau, Gus B. Bauman, Leah A. Dundon, Beveridge & Diamond, P.C., Washington, D.C., for Amicus Curiae National Association of Home Builders Supporting Appellants.

Before WIDENER, LUTTIG, and KING, Circuit Judges.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge WIDENER and Judge KING joined.

LUTTIG, Circuit Judge.

Plaintiffs-appellants, The Salt Institute and the Chamber of Commerce, claim that the Information Quality Act (IQA) grants them a legal right to accurate information and that defendant-appellee, the Secretary of Health and Human Services, Michael Leavitt, has deprived them of this right. The agency concluded that appellants had no such right under the IQA and denied appellants' petition seeking information and correction. The district court held that appellants lacked Article III standing to pursue a suit challenging the agency's denial. For the reasons stated below, we agree that appellants lack Article III standing and we therefore affirm the district court's dismissal of appellants' suit for lack of jurisdiction.

## I.

In May of 2003, appellants filed a petition with the National Heart, Lung, and Blood Institute (NHLBI) "seeking correction of information disseminated by NHLBI, which [information] directly states and otherwise suggests that reduced sodium consumption will result in lower blood pressure in *all* individuals." J.A. 26. The petition, which ·purported to be filed pursuant to the Information Quality Act, 44 U.S.C. § 3516, note, took issue with the findings of two studies that were funded in part by NHLBI grants. J.A. 26–28. The findings of those studies suggested that all Americans could reduce their blood pressure by lessening their sodium consumption. *Id.* at 27. NHLBI published these findings in news releases, on its website, and in at least one report. *Id.* at 29–30.

Appellants' petition for correction asserted that the studies' findings do not meet the standards for data quality set out in the IQA and claimed that, to meet the IQA's standards, those findings had to be qualified according to such factors as race, history of hypertension, sex, age, body-mass index, and education level. *See id.* at 30. In other words, appellants maintain that lowering sodium intake reduces blood pressure for only certain groups of Americans, not for all Americans. The petition requested that NHLBI "make publicly available" the raw data that supported the studies' findings in order to allow appellants to test their validity for different groups of individuals. *Id.* at 38.

Because appellants' lone request was that information be made public, NHLBI construed their petition for correction as a request for information under the Freedom of Information Act (FOIA) and denied it. *Id.* at 42–47, 49–50. Appellants appealed, restating their contention that their petition was proper under the IQA and arguing that it should be granted. *Id.* at 52–61. The agency affirmed its initial decision, *id.* at 69–73, and appellants filed

a complaint in the district court alleging that the agency had violated the IQA and the Administrative Procedure Act (APA), *id.* at 18–21. The district court dismissed the suit, holding that appellants lacked Article III standing, *Salt Institute v. Thompson,* 345 F.Supp.2d 589, 598–601 (E.D.Va.2004), and, alternatively, that they had no right to judicial review under either the IQA or the APA, *id.* at 601–03.

## II.

We review the district court's dismissal of the case for lack of standing de novo. *White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 459 (4th Cir.2005). The district court held that appellants had not established the injury in fact, traceability, or redressability necessary to establish their Article III standing. *Salt Institute,* 345 F.Supp.2d at 598–601. As to injury in fact, the district court concluded that "none of the Plaintiffs' alleged harms is sufficiently concrete and particularized to confer standing." *Id.* at 599.

To invoke the jurisdiction of an Article III court, the plaintiffs "must have suffered an 'injury in fact.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The injury "required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id.* at 578, 112 S.Ct. 2130 (quoting *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The injuries alleged by appellants are the deprivation of the raw data from the studies and the asserted incorrectness in NHLBI's public statements.

Although there is no general common law right to information from agencies or to informational correctness, appellants insist that these rights are conferred by the IQA. The IQA provides in full:

(a) In general.—The Director of the Office of Management and Budget shall, by not later than September 30, 2001, and with public and Federal agency involvement, issue guidelines under sections 3504(d)(1) and 3516 [this section] of title 44, United States Code, that provide policy and procedural guidance to Federal agencies for ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by Federal agencies in fulfillment of the purposes and provisions of chapter 35 of title 44, United States Code [this chapter], commonly referred to as the Paperwork Reduction Act.

(b) Content of guidelines.—The guidelines under subsection (a) shall—

(1) apply to the sharing by Federal agencies of, and access to, information disseminated by Federal agencies; and

(2) Require that each Federal agency to which the guidelines apply—

(A) issue guidelines ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by the agency, by not later than 1 year after the date of issuance of the guidelines under subsection (a);

(B) establish administrative mechanisms allowing affected persons to seek and obtain correction of information maintained and disseminated by the agency that does not comply with the guidelines issued under subsection (a); and

(C) Report periodically to the director—

(i) the number and nature of complaints received by the agency regarding the accuracy of information disseminated by the agency; and

(ii) how such complaints were handled by the agency.

44 U.S.C. § 3516, note. By its terms, this statute creates no legal rights in any third parties.[1] Instead, it orders the Office of Management and Budget to draft guidelines concerning information quality and specifies what those guidelines should contain. Because the statute upon which appellants rely does not create a legal right to access to information or to correctness, appellants have not alleged an invasion of a legal right and, thus, have failed to establish an injury in fact sufficient to satisfy Article III.

Against this conclusion, appellants argue that the Supreme Court recognized the sufficiency of informational injuries in *Federal Election Commission v. Akins,* 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998). However, in relying upon *Akins,* appellants confuse two distinct standing inquiries: the concreteness of the alleged injury and the status of the claimed right. In *Akins,* the Supreme Court held that an informational injury was "sufficiently concrete and specific" to satisfy Article III. *Id.* at 25, 118 S.Ct. 1777. In this case, we have not decided (and need not decide) the question whether appellants' alleged injury is sufficiently concrete and specific. Rather, we have decided the antecedent question whether Congress has granted a legal right to the information in question. *Akins* controls the former question, but not the latter. Indeed, on the latter question, *Akins* is distinguishable because the statute in question there, the Federal Election Campaign Act of 1971, clearly created a right to information by requiring the Federal Election Commission to make certain information available to the public. *See* 2 U.S.C. § 434(a)(11)(B) ("The Commission shall make a designation, statement, report, or notification that is filed with the Commission under this Act available for inspection by the public.").[2] The IQA, by contrast, does not create any legal right to information or its correctness.

Because the statute upon which appellants rely does not grant the rights that appellants claim were invaded, appellants cannot establish an injury in fact and, therefore, lack Article III standing to pursue their case in the federal courts.

1. Although appellants contend that this case has nothing to do with FOIA, that statute also does not grant legal protection to their claimed right to information. The Supreme Court has held that "data generated by a privately controlled organization which has received grant funds from an agency ... but which data has not at any time been obtained by the agency"—the exact sort of data sought by appellants here—" are not 'agency records' accessible under the FOIA." *Forsham v. Harris,* 445 U.S. 169, 178, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980). Subsequent legislation has required that data produced by federal grantees be accessible to the public through FOIA. Pub.L. No. 105–277, 112 Stat. 2681–495 (1998); 64 Fed.Reg. 54,926 (Oct. 8, 1999). However, this requirement applies only to data first produced under new or continuing grants awarded after April 17, 2000. 65 Fed.Reg. 14,406 (Mar. 16, 2000). The grants in question here were not awarded after April 17, 2000. Therefore, FOIA does not grant appellants a right to this information.

2. The appellants' reliance on *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989), is likewise unavailing. *Public Citizen* held that an informational injury under the Federal Advisory Committee Act was not a "generalized grievance." *Id.* at 449–50, 109 S.Ct. 2558. However, like the statute in *Akins,* the statute at issue in *Public Citizen* conferred the informational right the plaintiffs claimed had been violated. *See* 5 U.S.C. app. 2 § 10(a)(1) ("Each advisory committee meeting shall be open to the public."); *id.* at § 10(b) ("[T]he records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection.").

## CONCLUSION

The judgment of the district court dismissing the case for lack of jurisdiction is affirmed.

*AFFIRMED.*