A.T. MASSEY COAL COMPANY, INC., Elk Run Coal Company, Inc., Independence Coal Company, Inc., Marfork Coal Company, Inc., Performance Coal Company, Inc., and Massey Coal Sales Company, Inc., Plaintiffs,

v.

Jennifer MEADOWS, Court Reporter of the Circuit Court of Boone County, West Virginia, Defendant.

Civil Action No. 2:06–00484.

United States District Court,
S.D. West Virginia,
at Charleston.

March 1, 2007.

---

D.C. Offutt, Jr., Perry W. Oxley, Stephen S. Burchett, Offutt Fisher & Nord, Huntington, WV, for Plaintiffs.

Charles R. Bailey, Robert P. Martin, Vaughn T. Sizemore, Bailey & Wyant, Benjamin L. Bailey, Bailey & Glasser, Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND JUDGMENT ORDER ON MOTION TO DISMISS

FABER, Chief Judge.

Pending before the court is defendant Jennifer Meadows' motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (Doc. No. 7.) For the reasons set forth below, defendant's motion is hereby **GRANTED.**

### I. Factual and Procedural History

Plaintiffs A.T. Massey Coal Company, Inc., Elk Run Coal Company, Inc., Independence Coal Company, Inc., Marfork Coal Company, Inc., Performance Coal Company, Inc., and Massey Coal Sales Company, Inc. (hereinafter "plaintiffs"), were the defendants in an underlying state court action in the Circuit Court of Boone County, West Virginia. (Doc. No. 1 at 2.) That case was tried to a jury over the course of seven weeks during the summer of 2002, at the end of which the jury returned a verdict against plaintiffs in the amount of $50,038,406.00. (*Id.* at 2–3.) Plaintiffs subsequently filed post-trial motions in August of 2002, which the trial court overruled in March of 2005. (*Id.* at 3.)

On April 14, 2005, plaintiffs requested and paid for an appellate transcript of the trial, which was reported by defendant Jennifer Meadows (hereinafter "defendant"). (*Id.* at 3–4.) After defendant indicated that her workload was making it difficult to complete the transcript, plaintiffs were granted two extensions in which to file their petition for appeal, moving the

filing date back to January 1, 2006. (*Id.* at 4.) When defendant again indicated that the transcript would not be completed on time, plaintiffs initiated an investigation through the Administrative Office of the Supreme Court of Appeals of West Virginia. (*Id.*) Plaintiffs allege that this investigation revealed the cause of defendant's delay in completing the transcript to be "corrupt computer files, poor quality notes, faulty equipment," and "a practice of not recording or transcribing significant portions of the trial." (*Id.*) There are no Stenomask tapes from the trial, and the only audiotapes available for portions of the trial were recorded by a microphone situated such that parts of the recordings are inaudible. (*Id.* at 4–5.)

As a result of the investigation, the state Supreme Court further extended the deadline for plaintiffs' petition for appeal while the court's Administrative Office retained independent · court reporters to complete the transcript. (*Id.* at 5.) These independent reporters produced an allegedly "incomplete and inaccurate" copy of the transcript in May of 2006. (*Id.*) Plaintiffs allege that this transcript contains "countless errors," "significant gaps . . . due to inaudible portions of the tape," and "un-quantified, un-transcribed portions of the trial resulting from 'computer malfunction' and/or 'computer blackout.'" (*Id.* at 5–6.)

Working from the copy of the transcript produced by the Administrative Office's court reporters, defendant and the court reporter who substituted for her during part of the trial were able to complete further portions of the transcript. (Doc. No. 8 at 2.) Defendant then submitted the 1,009 additional pages so produced, along with the portions completed by the Administrative Office's court reporters, to the trial court for certification of completeness pursuant to West Virginia Code Section 51–7–4. In an August 25, 2006 order, the trial court approved and incorporated these segments of the transcript, and certified the resulting transcript as the full and complete record for appeal purposes in the underlying case. (Doc. No. 11 Ex. C.) The court thus denied plaintiffs' Motion to Cure Inadequate Trial Transcript by Order of New Trial Pursuant to Rule 80 and Rule 60(b). (*See* Doc. No. 10 Exs. L, M.)

On June 19, 2006, prior to the trial court's certification of the transcript below, plaintiffs filed their complaint in this court asserting federal question jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1988. Count I of the complaint alleges that plaintiffs' due process rights under the Fourteenth Amendment to the United States Constitution and Article Three of the Constitution of the State of West Virginia have been violated by defendant's alleged failure to produce a proper, timely transcript. (Doc. No. 1 at 3–6.) Count II asserts that defendant, as the official court reporter of the Circuit Court of Boone County, acted under color of state law when she allegedly "intentionally and materially misrepresented the status of the transcript." (Id. at 6–7.) Plaintiffs further allege that defendant's "intentional wrongful conduct resulted in excessive delays and a failure to produce a complete and accurate transcript of the lower court proceedings," thus violating plaintiffs' due process rights. (*Id.* at 8.)

Count III of the complaint alleges that defendant breached her statutory duty to produce a complete and accurate trial transcript—and "to certify the same as being correct"—through negligent reporting practices. (*Id.* at 8–9.) Plaintiffs assert that, as a result of this negligence, they have been unable to petition for appellate review and have suffered compensatory and other damages. (*Id.* at 9.) In Count IV, plaintiffs contend that defendant fraudulently, intentionally, and materially misrepresented the status of the trial tran-

script, and that plaintiffs justifiably relied upon these misrepresentations to their detriment. (*Id.* at 9–10.) Finally, Count V details the monetary losses—including attorney fees and the cost of posting a bond in the total amount of the jury award plus interest—plaintiffs claim to have incurred as a result of defendant's conduct. (*Id.* at 10–12.) For relief, plaintiffs demand compensatory damages, attorney fees and costs from both the underlying and instant action, punitive damages, a trial by jury, and further appropriate relief. (*Id.* at 12–13.)

Defendant seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (Doc. No. 7.) As grounds for dismissal, defendant argues that plaintiffs' suit is barred by the Eleventh Amendment to the United States Constitution, that plaintiffs lack standing, and that she is entitled to qualified immunity. In the alternative, defendant requests that the court grant a *Pullman* abstention or stay the case pending completion of the underlying proceedings. The motion is now ripe for adjudication.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim over which the court lacks subject matter jurisdiction. In reviewing a Rule 12(b)(1) motion based on lack of subject matter jurisdiction, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 459 (4th Cir.2005)(quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991)). In its review, however, the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond,* 945 F.2d at 768. As such, the court should grant the motion only if there is no genuine issue of material fact relevant to jurisdiction, and if the moving party is entitled to prevail as a matter of law. *Id.*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When reviewing such a motion to dismiss, this court accepts as true the facts as alleged in the complaint, views them in the light most favorable to the plaintiff, and recognizes that dismissal is inappropriate unless it appears to a certainty that the plaintiff would be entitled to no relief under any set of facts that could be proved in support of his claim. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994). A plaintiff must allege facts in the complaint sufficient to support the claimed legal conclusion. *See Migdal v. Rowe Price–Fleming Int'l, Inc.,* 248 F.3d 321, 326 (4th Cir.2001). Although pleading requirements are liberal, "more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." *Id.* (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990)).

## III. Analysis

Plaintiffs' complaint appears to allege two types of injury under a Fourteenth Amendment due process theory.[1] First,

---

1. Counts III and IV of the complaint, which respectively allege claims of negligence and fraud, are addressed in Part C below.

Although West Virginia State constitutional law shares much in common with its federal counterpart, "[t]he provisions of the Constitution of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the federal Constitution." *State v. Bonham,* 173 W.Va. 416,

plaintiffs assert that defendant's alleged failure to produce an accurate, complete transcript has rendered them unable to petition for appellate review, thus infringing their rights to due process of law. (*See* Doc. No. 1 ¶¶ 16, 17, 26.) Second, plaintiffs assert that the delay in producing the transcript is, itself, a violation of their rights to due process. (*See id.; see also* Doc. No. 10 at 13 ("Due to both the length of time that has passed since the trial and the failure of the defendant to provide a trial transcript, Massey has been denied its due process right to prosecute an appeal of the Trial Court's verdict.").) The court addresses each of these claims in turn.

## A. Plaintiffs' Right to Appellate Review

Defendant contends that plaintiffs' claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because they have not pled the constitutional minimum requirements of standing. (Doc. No. 11 at 2.) The jurisdictional concept of standing is derived from the requirement—set forth in Article III of the United States Constitution—that federal courts exercise jurisdiction only over actual "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. "A justiciable case or controversy requires a 'plaintiff [who] has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Planned Parenthood of S.C., Inc. v. Rose,* 361 F.3d 786, 789 (4th Cir.2004)(quoting *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

Three elements are necessary to establish standing. First, the plaintiff must have suffered an "injury in fact." *White Tail Park,* 413 F.3d at 458. This injury is defined as the invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent (i.e., not merely conjectural or hypothetical). *Id.* Second, there must be a causal connection between this injury and the conduct complained of. *Id.* Finally, it must be likely—not merely speculative—that a judgment in the plaintiff's favor will redress the injury. *Id.*

Furthermore, "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)(quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). This principle, the doctrine of mootness, likewise flows from the Article III limitation of federal jurisdiction to "cases" or "controversies." Indeed, mootness has often been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Arizonans,* 520 U.S. at 68 n. 22, 117 S.Ct. 1055 (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)).

As detailed above, plaintiffs' complaint alleges that the poor quality of the transcript defendant produced and her failure to produce a certified transcript have ren-

---

317 S.E.2d 501 (1984). Accordingly, and in order to avoid overreaching, to the extent plaintiffs assert violations of their due process rights pursuant to Article III, § 10 of the Constitution of West Virginia, those claims are also addressed in Part C. In so disposing of plaintiffs' state constitutional claims, the court makes no comment as to their substantive merit.

dered them unable to petition for appellate review. Approximately one month after plaintiffs filed their complaint in this matter, defendant submitted for certification her version of the transcript, which included 1,009 additional or corrected pages not produced by the Administrative Office's court reporters. (Doc. No. 7 Ex. 1; Doc. No. 11 Ex. C.) Subsequently, on August 25, 2006, the trial court certified this incorporated transcript pursuant to West Virginia Code Section 51–7–4.[2] (Doc. No. 11 Ex. C.) As plaintiffs, themselves, explain in the context of their negligence claim, "Such transcript, when certified by the official reporter and by the judge of the court, is considered authentic for all purposes and is used to make up the record on appeal." (Doc. No. 1 ¶ 29.)

■ To the extent that the absence of a certified transcript provided plaintiffs the requisite "injury in fact" at the time this suit was filed, that basis for standing was negated upon the trial court's subsequent certification of the trial transcript. Accordingly, this part of plaintiffs' due process claim must be dismissed as moot pursuant to Federal Rule of Civil Procedure 12(b)(1).

**B. Delay as Due Process Violation**

■ Plaintiffs also allege that—apart from any harm they have suffered due to the quality of the transcript—their due process rights have been violated merely by the delay in preparation of the transcript. Among the cases plaintiffs offer in support of this argument is *DeLancy v. Caldwell*, which they cite for the proposition that "[a]n excessive delay in furnish-ing a pretrial or trial transcript to be used on appeal or for post-conviction relief can amount to a deprivation of due process," even where the complaining party is ultimately provided the requested transcript. *DeLancy v. Caldwell*, 741 F.2d 1246, 1247 (10th Cir.1984)(per curiam).

Plaintiffs are correct that a constitutional deprivation may arise from the unduly tardy preparation of a trial transcript needed for appeal. The plaintiff in *DeLancy*, however, was an Oklahoma state prisoner who filed suit pursuant to 42 U.S.C. § 1983 on the basis of a delay in receiving the transcript from his underlying criminal trial. *DeLancy*, 741 F.2d at 1247. Indeed, although this cause of action is well-established for purposes of redressing the dilatory processing of appeals in criminal cases, the court has been unable to locate any authority to support its application outside of the context of incarceration. *See, e.g., United States v. Pratt*, 645 F.2d 89, 91 (1st Cir.1981); *United States v. Johnson*, 732 F.2d 379, 381–82 (4th Cir.1984); *Rheuark v. Shaw*, 628 F.2d 297, 303 (5th Cir.1980).

The availability of such a claim for inmates is logical, as it is derived from an accused's right to a speedy trial. In *Rheuark*, for example, the Fifth Circuit concluded that a prisoner can be denied due process "by any substantial retardation of the appellate process, including an excessive delay in the furnishing of a transcription of testimony necessary for completion of an appellate record." *Rheuark*, 628 F.2d at 302. In determining whether a prisoner has been denied due process be-

---

**2.** In pertinent part, this statute reads as follows:

A transcript of the testimony or proceedings, when certified by the official reporter and by the judge of the court, shall be authentic for all purposes, and shall be used by the parties to the cause in any further proceeding therein wherein the use of the same may be required.... The original transcript may be used, without further authentication, in making up the record on appeal, as provided in sections thirty-six and thirty-seven, article six, chapter fifty-six of this code.

W. Va.Code § 51–7–4.

cause of delay, courts generally consider the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which addressed an accused's right to a speedy trial. These factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Id.*

With regard to prejudice to the defendant, the *Rheuark* court—again following *Barker*—considered the interests of defendants that speedy adjudication is designed to protect: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Rheuark*, 628 F.2d at 303 n. 8. The Fourth Circuit follows the same analysis. *See, e.g., Johnson*, 732 F.2d at 381–82.

With the possible exception of the third interest above, the unique situation of incarcerated criminal defendants clearly factors heavily in due process claims based on delay in the judicial process. Plaintiffs offer no civil parallel to the interests of these defendants, instead stating in conclusory fashion that they have "suffered substantial prejudice" as a result of defendant's actions. (Doc. No. 10 at 15.) In the absence of reasoning or justification for doing so, the court declines to extend this cause of action to civil, unincarcerated plaintiffs. Because they have failed to state a claim upon which relief may be granted, the remainder of plaintiffs' federal due process claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## C. State Law Claims

As a result of the above rulings, plaintiffs' only remaining claims—the state constitutional claims and Counts III and IV, relating to negligence and fraud—arise under state law, the court having dismissed the federal claims that originally provided the sole basis for this court's subject matter jurisdiction. Under 28 U.S.C. § 1367(c)(3), a federal court may decline to exercise its supplemental jurisdiction over remaining state law claims where it has dismissed all of the claims that provided it with original jurisdiction.

The determination not to exercise supplemental jurisdiction in such a case is discretionary, and the Fourth Circuit Court of Appeals has made clear that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995). The court is of the opinion that plaintiffs' remaining claims would be more appropriately handled by a state court, and accordingly dismisses them without prejudice.

## IV. Conclusion

Plaintiffs' claims relating to violations of their rights to due process as protected by the United States Constitution are **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). The only remaining claims—the state constitutional claims and Counts III and IV, which allege state law claims of negligence and fraud—are **DISMISSED** without prejudice, the court having declined to exercise its supplemental jurisdiction over them.

The Clerk is directed to send certified copies of this Memorandum Opinion and Judgment Order to all counsel of record.