PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PHILIP BENHAM, as an individual
and as a representative of
Operation Save America, Inc.;
SHERYL CHANDLER, as an individual
and as a representative of
Operation Save America, Inc.;
OPERATION SAVE AMERICA,
INCORPORATED, a non-profit
corporation,

        *Plaintiffs-Appellants,*

        v.

CITY OF CHARLOTTE, NORTH
CAROLINA, a political subdivision
of the State of North Carolina;
EMILY WESTBROOK, in her
individual capacity; KEITH PARKER,
in his individual capacity,

        *Defendants-Appellees.*

No. 10-1132

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert J. Conrad, Jr., Chief District Judge.
(3:07-cv-00395-RJC-DCK)

Argued: December 8, 2010

Decided: February 15, 2011

Before MOTZ, KING, and GREGORY, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Motz and Judge Gregory joined.

---

**COUNSEL**

Frederick Herbert Nelson, AMERICAN LIBERTIES INSTITUTE, Orlando, Florida, for Appellants. Robert Erwin Hagemann, CITY ATTORNEY'S OFFICE, Charlotte, North Carolina, for Appellees.

---

**OPINION**

KING, Circuit Judge:

In September 2007, Philip Benham, Sheryl Chandler, and Operation Save America (collectively, the "Plaintiffs"), initiated this 42 U.S.C. § 1983 action in the Western District of North Carolina, seeking injunctive relief and damages from the City of Charlotte and two of its officials, Keith Parker and Emily Westbrook (collectively, the "City"). The Plaintiffs alleged in their complaint that two Charlotte ordinances contravene, inter alia, the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Following discovery, the City moved for summary judgment on all aspects of the complaint and, on January 8, 2010, the district court granted the motion. *See Benham v. City of Charlotte*, 682 F. Supp. 2d 549 (W.D.N.C. 2010) (the "Opinion"). The Plaintiffs have appealed the court's summary judgment ruling. As explained below, because the Plaintiffs are unable to sustain their burden of demonstrating that they suffered a cognizable injury, we vacate the judgment and remand for dismissal for lack of jurisdiction.

## I.

## A.

In January 2007, the Plaintiffs sought to obtain a permit to conduct an event at Independence Square Plaza in downtown Charlotte to speak about the Supreme Court's *Roe v. Wade* decision. Those events provide the background for these proceedings, and we begin with an overview of the bifurcated legal framework that governs public gatherings in Charlotte. One ordinance applies to "public assembl[ies]," *see* Charlotte City Code §§ 19-311 to -313 (the "Public Assembly Ordinance"), and a separate ordinance applies to "picket[s]," *see id.* §§ 19-301 to -303 (the "Picketing Ordinance"). The Public Assembly Ordinance defines a "public assembly" as

> (1)   [a] festival or demonstration which is reasonably anticipated to obstruct the normal flow of traffic upon any public street and that is collected together in one place; and

> (2)   [a] festival on the Old City Hall lawn, the Charlotte-Mecklenburg Government Center Plaza, or in Marshall Park, Polk Park, Independence Square Plaza, Arequipa Park or any other city-controlled park.

*Id.* § 19-311. As used in the Public Assembly Ordinance, a "festival" is "a concert, fair, exhibit, promotion, community event, block party, or similar event." *Id.* A "demonstration" is "a public display of sentiment for or against a person or a cause, including protesting." *Id.*

A group seeking to conduct a "public assembly" — including a demonstration anticipated to obstruct street traffic — must apply for and obtain a permit before the event takes place. Charlotte City Code § 19-312(a). The Public Assembly Ordinance spells out several reasons for which a permit may

be denied. *See id.* § 19-312(c). If a permit official denies an application, the permit applicant may appeal, and an appeals official is obliged to conduct a hearing. *Id.* § 19-312(f). If the denial of the permit application is upheld on appeal, the applicant is entitled to appeal to the Superior Court of Mecklenburg County. *Id.*

Pursuant to the Picketing Ordinance, a "picket" is defined as

> a public display or demonstration of sentiment for or against a person or cause, including protesting which may include the distribution of leaflets or handbills, the display of signs and any oral communication or speech, which may involve an effort to persuade or influence, including all expressive and symbolic conduct, whether active or passive.

Charlotte City Code § 19-301. A group seeking to conduct a "picket" may hold the event by right, without the prior issuance of a permit. *Id.* § 19-303(a). By-right picketing ordinarily "may be conducted on public sidewalks, . . . Independence Square Plaza, [or] any other city-controlled park, . . . and shall not be conducted on the portion of the public roadway used primarily for vehicular traffic." *Id.* Picketing may not, however, be conducted in certain parks in Charlotte, including Independence Square Plaza, "during a festival that has been permitted at that particular property or when that property has been otherwise reserved for private use." *Id.* § 19-303(b)(1).

The foregoing legal framework operates in practice as follows. First, an event must be characterized as a "festival" or a "demonstration." If the event is a festival, the organizer must obtain a public assembly permit before holding the event. If the event is a demonstration, it may proceed without a prior permit unless either (1) the space has been reserved under § 19-303(b)(1), or (2) the event is "reasonably anticipated to obstruct the normal flow of traffic upon any public

street" under § 19-311. When the event would so interfere with traffic, the event organizers must apply for and obtain a permit beforehand. The bottom line, then, is that a "demonstration" is regulated as a "public assembly" — for which the prior issuance of a permit is required — when it will interfere with traffic, but a demonstration is treated as a "picket" if it will not interfere with traffic.

### B.

The Plaintiffs submitted their application for a public assembly permit on December 14, 2006, identifying the event as the "Roe vs Wade Memorial" and stating that it was to be held on Monday, January 22, 2007, between 11:30 a.m. and 1:00 p.m., at "Trade [Street] & Tryon [Street] — in front of bronze disc sculpture." Dist. Ct. ECF No. 26-1.[1] In its Opinion, the district court observed that this area is known as Independence Square Plaza, and that it is located in the "very center of uptown Charlotte." *Benham*, 682 F. Supp. 2d at 552 n.1. The permit application stated that the Roe vs Wade Memorial would not involve any street closures, and advised that the event would not involve the sale of alcoholic beverages or food, the provision of portable toilets, or the charging of admission or vendor fees. Dist. Ct. ECF No. 26-1. The permit application described the event as "evangelical, gospel proclamation, praise + worship band, local Christian pastors speaking, post-abortive mothers give testimony, call to repentance," with a temporary stage for musical entertainment. *Id.* The application estimated that there would be an attendance of 100, based on a reference to "previous years' attendance," *id.*, even though plaintiff Philip Benham and the other event organizers had not previously applied for a public assembly permit in Charlotte. *Benham*, 682 F. Supp. 2d at 552 n.2.

---

[1]Citations herein to "Dist. Ct. ECF No. __" refer to the docket entry numbers for documents filed in the district court record that are not included in the Joint Appendix.

On December 20, 2006, permit official (and defendant) Emily Westbrook informed the Plaintiffs that she could not "accept and process [their] application for a Public Assembly Permit" for the Roe vs Wade Memorial. Dist. Ct. ECF No. 26-2. She explained that, "[w]hile the Public Assembly Ordinance provides for permitting of 'festivals' at Independence Square Plaza, it does not contemplate permitting 'demonstrations' at that location. Instead 'demonstrations' at Independence Square Plaza are covered by the City's Picketing Ordinance." *Id.* Westbrook's letter explained further that, because the event would be a "demonstration," would be held at a park, and was not anticipated to interfere with traffic, it could be held by right under the Picketing Ordinance, which "*does not* require a permit." *Id.*[2] The Plaintiffs promptly appealed Westbrook's decision to appeals official (and defendant) Keith Parker, who conducted a hearing on January 3, 2007. Parker upheld Westbrook's decision, ruling that she had properly deemed the proposed event a "demonstration" that "may be held from 11:30 a.m. to 1:00 p.m. on Monday[,] February 22[,] at Independence Square Plaza without the need for a permit other than an amplified noise permit pursuant to Charlotte City Code Section 15-64(a)(6) should the organizers wish to use amplification devices." Dist. Ct. ECF No. 26-3. The Plaintiffs did not seek review of Parker's appellate ruling, and held their event as scheduled on January 22, 2007. There were no arrests made in connection with the event, although the authorities issued two noise warnings.

## C.

Seven months later, on September 20, 2007, this civil

---

[2]In prior correspondence of December 18, 2007, Westbrook advised plaintiff Sheryl Chandler that she was "[e]specially" convinced the Roe vs Wade Memorial was a demonstration because "you are not requesting street closures. This being the case, you do not have to go through the whole process of application review and approval." Dist. Ct. ECF No. 26-3.

action was filed in the Western District of North Carolina, alleging that the City had violated the Plaintiffs' free speech and free exercise rights, and had impinged their due process and equal protection guarantees, as secured by the Constitutions of North Carolina and the United States. The Plaintiffs no longer pursue separate free exercise or due process claims, or separate state claims; the three claims presently pursued are that (1) the Public Assembly Ordinance is unconstitutionally vague and overbroad on its face, (2) the denial of the Plaintiffs application for a public assembly permit violated their free speech and equal protection rights, and (3) the Public Assembly Ordinance, as it interacts with the Picketing Ordinance, unconstitutionally burdens expressive assembly by favoring commercial and recreational assembly, thus contravening the Plaintiffs' free speech and equal protection rights.

Discovery was conducted, and the City thereafter moved for summary judgment on all the claims. The district court heard argument on that motion and, by its Opinion of January 7, 2010, awarded summary judgment to the City on the merits. The Opinion specified that "there is no evidence in the record that any speech or expressive conduct was inhibited by the lack of a public assembly permit." *Benham*, 682 F. Supp. 2d at 553.

### D.

On February 2, 2010, the Plaintiffs noted this appeal. They allege that we possess jurisdiction under 28 U.S.C. § 1291. None of the initial appellate briefs, however, discussed whether or how the Plaintiffs possess standing to sue. On November 24, 2010, prior to oral argument, we requested supplemental briefs from the parties on the issue of standing. Those briefs were promptly submitted and the standing issue was explored with counsel at argument. We briefly summarize those portions of the record pertinent to the standing issue.

The Plaintiffs allege in the complaint, inter alia, that they "have in the past, and concretely, earnestly[,] and immediately desire in the immediate future," to share their message through assemblies on sidewalks and in parks in Charlotte, J.A. 11;[3] that the enforcement of the Public Assembly and Picketing Ordinances has impaired and continues to impair their ability to express their message, *id.* at 21; that both ordinances are unconstitutionally overbroad and vague, *id.* at 21, 26, 29; that "[t]he future chilling of Plaintiffs' rights is an absolute certainty . . . until" an injunction is issued, *id.* at 22; and that "[t]he past chilling of Plaintiffs' rights to freedom of speech . . . has caused Plaintiffs to forfeit their rights thereby causing Plaintiffs to suffer actual and nominal damages," *id.* at 27. For relief, the complaint seeks both declaratory and injunctive relief, plus damages.

In the course of discovery, the parties took depositions of plaintiff Benham and several Charlotte officials. Of particular relevance to the standing issue is Benham's deposition testimony. When counsel for the City asked Benham whether he "had planned [the Roe vs Wade Memorial] and [whether he] had some vision of what it would look like ahead of time," Benham responded affirmatively. Dist. Ct. ECF No. 23-1. Benham also acknowledged that the event took place. When asked, "in hindsight, looking at what actually transpired at the event, was it consistent with what you had envisioned ahead of time," the Plaintiffs' lawyer, Mr. Nelson, objected on the ground that the inquiry "calls for speculation." *Id.* Nelson denied that he was instructing Benham not to answer the question, and Benham was asked the same question for a second time. Nelson then reiterated his objection, at which point Benham interjected, "I'll stand on that," to which he added, "I can't speculate on that." *Id.* At no time in the proceedings — in the district court or in this appeal — have the Plaintiffs

---

[3]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

asserted that the planning or execution of the event would have been any different had they received a permit.

## II.

The issue of standing to sue is a legal question that we assess de novo. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). When a question of standing is apparent, but was not raised or addressed in the lower court, it is our responsibility to raise and decide the issue sua sponte. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). If we conclude that the Plaintiffs' lack of standing deprived the district court of jurisdiction, "we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Stephens v. Cnty. of Albemarle*, 524 F.3d 485, 490 (4th Cir. 2008) (internal quotation marks omitted). If an appellate court determines that the district court lacked jurisdiction, vacatur of the district court's ruling, along with a remand with instructions to dismiss, is the appropriate disposition. *See Walters v. Edgar*, 163 F.3d 430, 437 (7th Cir. 1998).

## III.

We begin — and end — our inquiry with the question of whether the Plaintiffs possess standing to pursue this action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Standing to sue is one aspect of the mandate that an action must present a "case or controversy" under Article III of the Constitution. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750-51 (1984). "The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government," and standing to sue "is perhaps the most important of these doctrines." *Id.* at 750.

### A.

The Supreme Court has explained that "the irreducible constitutional minimum of standing contains three elements."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A claimant must demonstrate (1) an "injury in fact"; (2) a "causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable" to the defendant's actions; and (3) a likelihood that the injury "will be redressed by a favorable decision." *Id.* at 560-61 (internal quotation marks omitted). The first element — injury in fact — is the one that concerns us here, and a proper assessment thereof requires us to decide whether the Plaintiffs have "adduce[d] facts demonstrating that [they have] suffered an invasion of a legally protected interest," *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005) (internal quotation marks omitted), that is "concrete and particularized" and "actual or imminent," rather than "conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

1.

Although the assertion of a facial challenge to an ordinance based on the First Amendment may warrant some relaxation of the prudential rule that a claimant may assert her own rights only, the claimant must nevertheless satisfy the injury-in-fact requirement grounded in Article III. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988). It is axiomatic that the Article III standing requirements apply to all actions in the federal courts; the fact that the claimant may assert facial vagueness and overbreadth challenges does not alter this aspect of federal jurisprudence. *See Harrell v. Fla. Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010) (vagueness); *Peterson v. Nat'l Telecomms. & Info. Admin.*, 478 F.3d 626, 633-34 (4th Cir. 2007) (overbreadth).

A First Amendment injury in fact may take several forms when a permitting system is at issue. At the most basic level, the denial of a permit to engage in expressive activity altogether constitutes a First Amendment injury. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759-60 (1988). Another readily cognizable First Amendment injury occurs

when "[a] regulation . . . reduces the size of a speaker's audience." *Stroube*, 413 F.3d at 461. Similarly, "the denial of a particular opportunity to express one's views may create a cognizable claim despite the fact that other venues and opportunities are available." *Id.* (internal quotation marks omitted). A municipal ordinance that interferes with a group's "need[ ] to plan the substance and placement of its" message is another example of a cognizable injury. *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001).

An additional cognizable injury under the First Amendment is self-censorship, which occurs when a claimant "is chilled from exercising her right to free expression." *Harrell*, 608 F.3d at 1254 (internal quotation marks omitted). We have recognized that, "to demonstrate injury in fact, it [is] sufficient . . . to show that [one's] First Amendment activities ha[ve] been chilled." *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) (internal quotation marks omitted). "[S]ubjective" or speculative accounts of such a chilling effect, however, are not sufficient. *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Any "'chilling' effect . . . must be objectively reasonable." *Zanders v. Swanson*, 573 F.3d 591, 593-94 (8th Cir. 2009). Nevertheless, a claimant "need not show she ceased those activities altogether" to demonstrate an injury in fact. *Smith*, 488 F.3d at 272 (internal quotation marks omitted). Government action will be sufficiently chilling when it is "likely [to] deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks omitted).

2.

Before proceeding to an analysis of the standing to sue question, we will also explore some procedural issues that can arise when standing is at issue. The Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) — a case from this Circuit — is particularly instructive. There,

the Court considered a Fair Housing Act claim where the plaintiffs alleged that an apartment complex's "racial steering" practices had resulted in the deprivation of the benefits of interracial association. *Id.* at 375. The defendants contended that the plaintiffs had suffered no "distinct and palpable" injury because they did not "demonstrate how the asserted steering practices . . . may have affected the *particular* neighborhoods in which the [plaintiffs] resided." *Id.* at 377. The district court dismissed the case before any discovery was undertaken. *See id.* at 369. The Supreme Court agreed with us that the dismissal was premature because, "in the absence of further factual development," one could not "say as a matter of law that no injury could be proved." *Id.* at 377.[4] The Court recognized that the "extreme generality of the complaint makes it impossible to say that [the plaintiffs] have made factual averments sufficient if true to demonstrate injury in fact," but nonetheless refused to dismiss in light of "the liberal federal pleading standards," because "[f]urther pleading and proof might establish" a sufficiently particular injury. *Id.* at 377-78. Accordingly, *Havens Realty* remanded for the plaintiffs to have "an opportunity to make more definite the allegations of the complaint," explaining that, "[i]f after that opportunity the pleadings fail to make averments that meet the standing requirements . . . , the claims should be dismissed." *Id.* at 378.[5]

---

[4]In our *Havens Realty* decision, we explained that the "dismissal prevented plaintiffs . . . from proceeding to trial. Since allegations bearing on standing must be actualized by proof, the defendants may, on remand, contest these as any other facts. . . . If the allegations are not supported by proof at trial, the case may be terminated for lack of standing . . . ." *Coles v. Havens Realty Corp.*, 633 F.2d 384, 391 (4th Cir. 1980).

[5]A defect of standing can arise at the pleading stage in either of two events: first, where the complaint simply "fail[s] to allege facts upon which subject matter jurisdiction can be based"; or second, where the allegations are untrue. The procedures for evaluating these two circumstances differ significantly, and are summarized in *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted).

## B.

With these principles in mind, we turn to the standing to sue issue in this case, which must be decided favorably to the Plaintiffs before we can proceed to the merits of the constitutional issues being pursued.

### 1.

We are confident that the Plaintiffs have not alleged any injury arising from the lack of a permit for the Roe vs Wade Memorial. Indeed, this is not a situation where the permit sought by the Plaintiffs was a necessary prerequisite to *any* form of the expressive activity they wished to undertake. And it is clear that the Plaintiffs cannot invoke as injuries the absence of street closures or the lack of sound amplification. The Plaintiffs simply cannot complain that streets in Charlotte were not closed for their event when they did not request any street closures, and they have never asserted that the lack of such closures interfered with their event.[6] As for the lack of sound amplification, the Plaintiffs cannot claim any injury arising therefrom because they did not avail themselves of a separate permit to authorize sound amplification that could have been obtained without a public assembly permit, especially after defendant Parker went so far as to direct the Plaintiffs' attention to the amplification permit ordinance. *See* Charlotte City Code §§ 15-64 to -65.

This case is similar to *Stephens v. County of Albemarle*, 524 F.3d 485 (4th Cir. 2008), where we faced nearly identical procedural circumstances and comparably speculative allegations. Stephens had alleged that certain confidentiality agreements entered into by the defendants violated her First

---

[6]On appeal, the Plaintiffs emphasize that, after their permit application was initially refused, they offered to amend the application to request street closures. This assertion is unpersuasive, however, because the Plaintiffs never allege that the lack of street closures interfered with their event.

Amendment right to receive information. After initially dismissing her complaint for lack of standing, the district court reinstated the matter. Thorough discovery was then undertaken, and the court thereafter awarded summary judgment to the defendants on the merits. On appeal, we raised standing as an issue sua sponte, and requested supplemental briefing. In an opinion authored by Chief Judge Williams, we ruled that Stephens had not shown a cognizable injury, because she did "not provide[ ] any factual support for" her allegations. *Id.* at 493. Instead, she "merely speculate[d] that she . . . would have been and that she continues to be a potential recipient of speech from" the individuals whose speech was limited by the confidentiality agreements. *Id.* Accordingly, we vacated the district court's judgment and remanded for dismissal.

The Plaintiffs' claims in this case are even more conjectural and speculative than those involved in *Stephens*. Indeed, the Plaintiffs have never explained how the event they held was any different from the one that would have taken place had a permit been granted. In *Stephens*, by contrast, the plaintiff articulated a chain of events by which the complained-of harm might have been averted; the deficiency we identified was the lack of any factual support for the hypothetical chain of events. Here, however, the Plaintiffs ask that we compare two events — one purely imaginary — and, on that basis, divine an injury. Such an inquiry would be an exercise fraught with supposition, and we decline to take it up.

2.

On the other hand, a question that warrants careful consideration is whether the Plaintiffs suffered some injury because their lack of a permit prevented them from reserving space, and thus made the Roe vs Wade Memorial susceptible to being "displaced" by a recreational or commercial event. The Plaintiffs simply have not alleged any burden they suffered from the possibility of such a displacement, however, and

they have failed to adduce evidence thereof despite the opportunity to do so in discovery.

The framework of the Public Assembly and Picketing Ordinances prevents us from immediately foreclosing the possibility that the Plaintiffs sustained an injury on account of some burden that those ordinances place on certain forms of expressive assembly. Under that framework, an event in Charlotte with the characteristics of the Roe vs Wade Memorial — that is, an event that (1) is a "demonstration" rather than a "festival," (2) does not anticipate street closures, and (3) is set to take place in a park such as Independence Square Plaza — is categorically excluded from obtaining a permit under the Public Assembly Ordinance. Because the organizers of such an event will never secure a permit, and because the Picketing Ordinance forbids a by-right picket from being conducted in a location reserved for an event that has secured a permit, *see* Charlotte City Code § 19-303(b)(1), an event such as this could be displaced by a later-arriving group that obtained a permit. The later-arriving group could do so if its event was either (1) a "demonstration" that sought street closures or (2) a "festival" that sought street closures or took place in a park. *See id.* § 19-311.

The possibility of such a displacement might be a cognizable constitutional injury on the ground that it would hamper event organizers from organizing, publicizing, or carrying out First Amendment protected expression and assembly. Because a selected venue could be displaced by a second group that comes along later — perhaps a group expressly seeking to upset the first group's planned event — organizers must plan a by-right event knowing that it could be forced to change venues at the last moment. Such last-minute changes could decrease an event's turnout, and the possibility of displacement could compel the organizers to inform prospective attendees of a last-minute venue change. Such a burden could discourage potential organizers from planning by-right pickets at all. In such circumstances, organizers such as the Plaintiffs

might be able to allege a cognizable injury, because the regulations "reduce[d] the size of [their] audience," *Stroube*, 413 F.3d at 461; because they were denied a "particular opportunity to express [their] views," *id.*; because the regulations interfered with their "need[ ] to plan the substance" or, at least, "placement" of their message, *Va. Soc'y for Human Life*, 263 F.3d at 389; or because the challenged ordinances caused sufficient self-censorship, *see Constantine*, 411 F.3d at 500.

Even though the possibility of such a displacement might constitute an injury in some circumstances, we have little difficulty concluding that the Plaintiffs have not sufficiently alleged any such injury, and they did not adduce any evidence thereof in the extensive discovery conducted below. With respect to an injury that might arise from the mere possibility that their event could have been displaced, the Plaintiffs are silent. And the parties conducted extensive discovery that revealed no evidence of past displacement by other groups, or evidence of past or present fear of displacement on the part of the Plaintiffs. The discovery proceedings should have revealed any such injury, however, since the merits and standing questions in this case are closely bound together: evidence of logistical burdens arising from a possibility of displacement would speak both to standing and the merits. Indeed, the record is replete with earlier permit applications in Charlotte for other events, as well as deposition testimony of City officials about such applications. There is not, however, a single instance where a group sought and was denied a permit, and then was displaced from its intended venue by another group's successful permit application.

In the discovery proceedings, the City repeatedly pressed Benham to articulate how the Roe vs Wade Memorial would have differed had it been granted a permit, but he elected to rest on his counsel's suggestion that the question called for speculation. Having chosen not to develop facts that might have shown a cognizable injury, the Plaintiffs cannot point to

that very choice as a basis for their standing, or for a remand for yet more discovery. Such an assertion would run headlong into the interests of judicial economy and efficiency; after all, this appeal is from an award of summary judgment based on a well-developed record.[7]

The full evidentiary record readily distinguishes this case from those where appellate courts have remanded for more definite allegations, *see Havens Realty*, 455 U.S. at 377-78, or for jurisdictional discovery, *see Kerns*, 585 F.3d at 196. In *Havens Realty* and *Kerns*, for example, there was no discovery conducted before the dismissals, even though such discovery might have shed light on the jurisdictional issues. Here, by contrast, the district court did not dismiss for lack of standing and had a fully developed evidentiary record when it awarded summary judgment. Thus, the Plaintiffs had a full opportunity to establish their standing to sue, if they could do so. Although the Plaintiffs allege that they are chilled from holding future events because of the Public Assembly and Picketing Ordinances, the only evidence on the point — the holding of the Roe vs Wade Memorial, with apparently no change in how the event was conducted — belies this conclusory assertion. The discovery already conducted, moreover, afforded the Plaintiffs the opportunity to adduce evidence of any burden they would face going forward. Under these circumstances, therefore, the Plaintiffs lack standing to sue and we are unable to sustain the summary judgment award.

---

[7]Although these Plaintiffs proceeded to hold their event in Independence Square Plaza (as planned), we do not rule out the possibility that a person hardy enough to withstand a chilling effect could assert an injury on account of the burden she faced in carrying out the desired activity. A ruling to the contrary might be especially problematic when a chilling effect is plausible, since others might never come forward to challenge the ordinances. *See Constantine*, 411 F.3d at 500. Here, the defect is simply the Plaintiffs' failure to allege (much less prove) that they labored under any burden in holding their event.

3.

As the final aspect of our disposition of the standing to sue inquiry, we turn to the Plaintiffs' assertion that the Public Assembly Ordinance is unconstitutionally vague because the terms "festival" and "demonstration" overlap, thereby affording the City impermissible discretion in classifying a proposed event. The Plaintiffs are unable to substantiate this assertion, however, because "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974). The purpose of the Roe vs Wade Memorial was public advocacy regarding the *Roe v. Wade* decision. As such, the event fell squarely within the Public Assembly Ordinance's definition of "demonstration" — that is, "a public display of sentiment for or against . . . a cause," Charlotte City Code § 19-311. The Public Assembly Ordinance, therefore, is not even "arguably vague" in the context of the Roe vs Wade Memorial. *Harrell*, 608 F.3d at 1254 (emphasis omitted). Accordingly, the Plaintiffs' vagueness challenge cannot succeed, as "even if the outermost boundaries of [the Public Assembly Ordinance] may be imprecise, any such uncertainty has little relevance here, where [the Plaintiffs'] conduct falls squarely within the 'hard core' of the statute's proscriptions." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973); *see also Hill v. Colorado*, 530 U.S. 703, 733 (2000).

IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for dismissal for lack of jurisdiction.

*VACATED AND REMANDED*