**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1404**

VISTA-GRAPHICS, INC.; RANDAL W. THOMPSON,

Plaintiffs – Appellants,

v.

VIRGINIA DEPARTMENT OF TRANSPORTATION; VIRGINIA TOURISM CORPORATION; AUBREY L. LAYNE, JR., in his official capacity as Secretary of Transportation; CHARLES A. KILPATRICK, P.E., in his official capacity as Commissioner of the Virginia Department of Transportation,

Defendants – Appellees,

and

HIGHWAY INFORMATION MEDIA, LLC,

Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, Senior District Judge. (2:15-cv-00363-RGD-RJK)

Argued: December 7, 2016                    Decided: March 29, 2017

Before KING, DUNCAN, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Kevin Edward Martingayle, BISCHOFF MARTINGAYLE, P.C., Virginia Beach, Virginia, for Appellants. Trevor Stephen Cox, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Mark R. Herring, Attorney General of Virginia, Jeffrey M. Bourne, Deputy Attorney General, Jeffrey R. Allen, Janet W. Baugh, Eric K.G. Fiske, Senior Assistant Attorneys General, Elizabeth B. Myers, Grant E. Kronenberg, Assistant Attorneys General, Stuart A. Raphael, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Vista-Graphics, Inc. and its president, Randal Thompson (collectively, the plaintiffs), are the private publishers of three informational guides for tourists visiting Virginia (the guides). The plaintiffs seek to display these guides at publicly accessible "rest areas" and "welcome centers" (collectively, rest areas) operated by the Commonwealth of Virginia.

The plaintiffs brought this lawsuit against the defendants, the Virginia Department of Transportation (VDOT) and other Virginia entities, officials, and contractors (collectively, the defendants or the Commonwealth), challenging the Commonwealth's decision to require payment of fees for the display of guides at rest areas. The plaintiffs also alleged that the Commonwealth's limitations on the content of such guides has caused the plaintiffs to engage in "self-censorship" and violates the plaintiffs' rights under the First Amendment.

After considering the plaintiffs' arguments, we hold that the guides constitute government speech at the time of their placement in rest areas operated by the Commonwealth. Accordingly, the publishers' placement of these guides in the rest areas is not subject to protection under the Free Speech Clause of the First Amendment. In addition, we find no merit in the plaintiffs' remaining arguments. We therefore affirm the district court's judgment.

3

## I.

The plaintiffs publish three informational guides for tourists visiting Virginia, namely, the "Virginia Beach Visitors Guide," the "GoWilliamsburg Visitors Guide," and the "Virginia Guide." The guides include a variety of information for travelers in the Commonwealth, including maps, lists of lodging options, restaurants, and attractions, as well as "advice, guidance and opinions relating to products, services and potential destinations in Virginia." For more than eight years, the plaintiffs have displayed the guides at rest areas administered by VDOT that are located along public highways in Virginia. Until 2012, the Commonwealth did not require that the plaintiffs pay a fee before displaying the guides in rest areas.

In 2012, in an effort to increase revenue at rest areas, VDOT instituted the "Sponsorship, Advertising, and Vending Enhancement" (SAVE) program. Under the SAVE program, any vendor placing sponsorships, products, or advertising in a rest area is "charged a commercially reasonable fee."

The SAVE program also established restrictions on the content of materials displayed at rest areas. For example, the subject matter of displayed materials is "limited to commercial speech, VDOT or government information . . . relating to highways, the safety and welfare of the traveling public, and other activities of the Commonwealth." Additionally, the content of such materials cannot "include subject matter that . . . states or implies that the Commonwealth or any of its agencies endorse a commercial vendor product or service," "demeans or disparages an individual or group of individuals," "promotes a political candidate or issue," is obscene, promotes illegal activity, or is

4

deceptive. VDOT retains the right of prior approval of all such materials and has established procedures for review of its decisions should disputes arise.

In June 2015, the Commonwealth entered into a contract with Highway Information Media LLC (HIM) (the 2015 contract) "to plan, implement, deliver and manage a comprehensive and quality Partnership Marketing and Advertising Program" (PMA program). Among other restrictions, the 2015 contract prohibited HIM from "align[ing] itself with advertisements on behalf of the [Commonwealth] that would in any way have a negative impact, dishonor or discredit" the Commonwealth, as well as from entering into contracts that would result in advertising "for religious purposes," to promote political candidates, for alcohol or tobacco products, or that would result in the "rating" of tourist attractions. On the same day, the Commonwealth issued another document titled "Virginia Welcome Centers & Safety Rest Areas Partnership Marketing & Advertising Program Policies," which similarly limited the content permitted in materials displayed at rest areas.

The plaintiffs filed suit against the Commonwealth, challenging: (1) the fees charged to place displays in the rest areas; and (2) the content restrictions in the SAVE and PMA programs (collectively, the content restrictions[1]). The plaintiffs alleged that the

---

[1] In addition to the content restrictions in the SAVE and PMA programs, the plaintiffs also challenged the more general restrictions set forth in Virginia Administrative Code Title 24, Section 30-50-10(L), which prohibits the use of "threatening, abusive, boisterous, insulting or indecent language or gesture[s]" at rest areas, and requires authorization from the Commonwealth before a person may engage in a public demonstration at a rest area.

5

fees and content restrictions violated the First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and certain provisions of Virginia law. The plaintiffs alleged that they previously included political and religious information in their guides that would violate the new content restrictions, and that they have "engaged in self-censorship and have refrained from soliciting and distributing many forms of information" because of those content restrictions.

The defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed the plaintiffs' challenge to the content restrictions for lack of standing under Article III of the Constitution, concluding that the plaintiffs failed to allege an injury-in-fact. The court also held that although the plaintiffs had standing to challenge the fee requirements, the guides at issue conveyed government speech and therefore are not governed by the Free Speech Clause. The court also rejected the plaintiffs' due process, equal protection, and state law claims. The plaintiffs filed this appeal.

## II.

## A.

The plaintiffs first argue that the district court erred in dismissing their challenge to the content restrictions for lack of standing.[2] The district court reasoned that because

---

[2] We agree with the parties that the court correctly concluded that the plaintiffs have standing to challenge the Commonwealth's imposition of fees, which fees the plaintiffs have paid.

the plaintiffs' guides had never been rejected by the Commonwealth, and the plaintiffs had not sought clarification from the Commonwealth regarding what information might be prohibited, any alleged harm, or "chilling" effect, was unreasonable. We disagree, and conclude that the plaintiffs adequately have alleged an injury-in-fact for purposes of Article III standing.

We review the district court's dismissal for lack of subject matter jurisdiction de novo. *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013). Although it is the plaintiffs' burden to establish standing, the requirements for standing are "somewhat relaxed" in First Amendment cases. *Id.* at 234-35. A plaintiff may establish an injury-in-fact "by a sufficient showing of self-censorship," that is, by demonstrating that he was "chilled" from engaging in free expression. *Id.* at 235 (quoting *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011)) (internal quotation marks omitted). Any alleged "chilling effect" must be objectively reasonable, and "[s]ubjective or speculative accounts" of a chilling effect are insufficient to establish an injury-in-fact. *Id.* at 236 (quoting *Benham*, 635 F.3d at 135). Accordingly, "[g]overnment action will be sufficiently chilling when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* (quoting *Benham*, 635 F.3d at 135).

We agree with the district court that the Commonwealth's lack of threatened or actual enforcement against the plaintiffs, and the plaintiffs' failure to seek guidance from the Commonwealth regarding compliance with the content restrictions, undermine the strength of the plaintiffs' standing allegations. Nevertheless, at this early stage of the case, we conclude that the plaintiffs sufficiently have alleged an injury-in-fact. *See*

7

*Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013) (explaining that a plaintiff's burden to show standing "tracks the manner and degree of evidence required at each successive stage of litigation"), *abrogated on other grounds by Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).

As we explained in *Clatterbuck*, we will not impose on plaintiffs at the pleading stage an unduly burdensome specificity requirement to show precisely how their First Amendment rights may be impacted by a government regulation. *Id*. at 554. Applying this somewhat relaxed requirement to the plaintiffs' complaint alleging violation of their First Amendment rights, we conclude that the plaintiffs have met their burden to allege an injury-in-fact with regard to their allegations that: (1) they previously have included prohibited information in their guides; (2) they think that their guides may violate the existing content restrictions; and (3) the plaintiffs have refrained from including certain information in their guides based on the restrictions. Accordingly, we hold that the plaintiffs have standing to challenge the content restrictions.

B.

We turn to consider whether the district court erred in applying the government speech doctrine in dismissing the plaintiffs' First Amendment claims. The plaintiffs argue that their guides should not be considered government speech, because the guides are produced by a private entity, and because the Commonwealth has prohibited private entities from implying that the content of the guides has been endorsed by the Commonwealth. We disagree with the plaintiffs' arguments.

8

We review de novo the district court's dismissal of the plaintiffs' complaint under Rule 12(b)(6). *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). In conducting our review, we accept the factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiffs.[3] *Id.*

The Free Speech Clause of the First Amendment applies only to the government's regulation of private speech, and not to the government's own expressive conduct. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). The government "has the right to speak for itself" and "is entitled to say what it wishes." *Id.* (citations and quotation marks omitted). The government speech doctrine is premised on the rationale that, were such speech subject to analysis under the Free Speech Clause, the government would be unable to advance its own policy interests by promoting a particular viewpoint.[4] *Id.* at 468; *see also Walker v. Tex. Div., Sons of Confederate Veterans*, 135 S. Ct. 2239, 2246 (2015); *Ill. Dunesland Pres. Soc'y v. Ill. Dep't Nat. Res.*, 584 F.3d 719, 725 (7th Cir. 2009).

The Supreme Court has defined the contours of our government speech analysis in two recent cases. In the first, the Court held that permanent monuments erected on public

---

[3] To the extent that the plaintiffs rely on a statement in their complaint that "[t]he information distributed by [the plaintiffs] is not 'government speech' on behalf of the Commonwealth of Virginia," this allegation plainly is a legal conclusion that we need not accept as true. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 71 (4th Cir. 2016).

[4] Although the Free Speech Clause does not apply to government speech, such speech is otherwise limited by, for example, the Establishment Clause, as well as applicable statutes and regulations. *Summum*, 555 U.S. at 468-69.

9

property "typically" constitute government speech, even when the monument is created and donated by a private entity. *Summum*, 555 U.S. at 470-71. The Court reasoned that monuments on public property "are meant to convey and have the effect of conveying a government message." *Id*. at 472. The Court thus concluded that the Free Speech Clause did not apply to the city's decision to reject a particular monument from display in a public park. *Id*. at 481.

In the second recent case, the Court considered a Free Speech claim brought by the Texas Division of the Sons of Confederate Veterans (SCV). *See Walker*, 135 S. Ct. 2239. SCV challenged the State of Texas' decision to reject SCV's request for the state to issue a specialty license plate displaying the organization's name and a depiction of a confederate flag. *Id*. at 2245. Relying on its prior decision in *Summum*, the Court identified three factors for use in determining whether certain expression constitutes government speech. The Court listed: (1) the government's history of using the particular mode of expression to communicate with the public; (2) whether that mode of expression is "often closely identified in the public mind" with the state; and (3) the extent to which the state regulated the content of messages contained in the mode of expression and exercised "final approval authority" over these messages. *Id*. at 2248-49 (quoting *Summum*, 555 U.S. at 472-73).

After considering these factors, the Court observed that license plates "long have communicated messages" from states, that state-issued license plates operate as a means of state identification for vehicles, and that the state fully controlled the messaging on such license plates in order to "choose how to present itself and its constituency." *Id*. at

2248-49. The Court therefore concluded that messages on state-issued license plates represent government speech not subject to analysis under the Free Speech Clause. *Id*. at 2248-50, 2253.

Applying the reasoning from *Walker* to the present case, we easily conclude that the plaintiffs' guides displayed at rest areas operated by the Commonwealth constitute government speech. The plaintiffs alleged in their complaint that the Commonwealth historically has used rest areas to disseminate information to visitors and to promote tourism generally. *See Walker*, 135 S. Ct. at 2248. Moreover, the gravamen of the plaintiffs' complaint is that the Commonwealth regulates too heavily the content of guides displayed at such centers.[5] *See id*. at 2249.

And, most importantly, the rest areas are operated by the Commonwealth and are located along public highways. Some of these facilities are designated explicitly by the Commonwealth as "welcome centers" for travelers in Virginia. VDOT is authorized to create maps and provide other information at these locations, alongside the guides produced by the plaintiffs. *See* Va. Code Ann. § 33.2-1217(D). Under these circumstances, we are confident that the public will associate the plaintiffs' guides with the Commonwealth of Virginia, regardless whether the government itself produces the

---

[5] The plaintiffs argue that the Supreme Court in *Summum* based its conclusion on the permanent nature of the monuments proposed to be erected in a city park whereas, here, the plaintiffs' guides are not permanent fixtures. The Court in *Walker*, however, did not find the issue of permanence dispositive when it concluded that non-permanent license plates constitute government speech. *Walker*, 135 S. Ct. at 2249-50.

11

guides.[6] *See Walker*, 135 S. Ct. at 2249; *see also Summum*, 555 U.S. at 468 ("A government entity may exercise [the] same freedom to express its views when it receives assistance from private sources for the purpose of delivering a government-controlled message.").

We also agree with the observation of the Seventh Circuit that states ordinarily choose to display tourist-related materials on public property in order to promote state attractions. *Ill. Dunesland Pres. Soc'y*, 584 F.3d at 725. Like the Seventh Circuit, we decline to adopt a rule that would require a state to display guides espousing every potential point of view, even those contrary to the state's chosen message. *See id*. The infirmity of such a proposed rule is obvious. For example, under such a rule, a state would be required to display information denigrating state facilities or promoting out-of-state tourist attractions. A sweeping rule of this nature also could yield the reverse effect of having the state cease displaying such guides in order to avoid First Amendment challenges. *See id*. at 725-26. Accordingly, we conclude that the guides displayed at the rest areas are government speech not subject to protection under the Free Speech Clause.[7]

---

[6] Our conclusion is not altered by the fact that the content restrictions prohibit material from suggesting that the Commonwealth endorses a particular product or service. A message may still be "closely identified in the public mind" with the Commonwealth irrespective of an explicit governmental endorsement. *See Walker*, 135 S. Ct. 2248 (citation omitted).

[7] In light of our holding that the guides are government speech, we do not address the plaintiffs' contention that the content restrictions and fees violate the Free Speech Clause.

C.

The plaintiffs do not plead separately other claims for relief, but have presented in group format various other challenges to the content restrictions and fees. We conclude that the district court properly dismissed these additional claims.

Like the district court, we reject any contention by the plaintiffs that their rights under the Due Process Clause were violated because the content restrictions are inconsistent with each other and with Virginia Administrative Code Title 24, Section 30-50-10(L). As previously noted, Section 30-50-10(L) provides:

> No threatening, abusive, boisterous, insulting or indecent language or gesture shall be used within [waysides and rest areas]. Nor shall any oration, or other public demonstration be made, unless by special authority of the commissioner.

The plaintiffs fail to explain why this provision allegedly is in conflict with the content restrictions, thereby depriving them of their due process rights. Nor do the plaintiffs identify in what respect the guides might violate Section 30-50-10(L). Moreover, as previously explained, to the extent that the content restrictions have deterred the plaintiffs from engaging in certain conduct, any such expression was government speech not protected by the Free Speech Clause.[8]

Finally, the plaintiffs make a single passing reference in their complaint to the Equal Protection Clause. This conclusory assertion is insufficient to state a claim to

---

[8] To the extent that the plaintiffs challenge "the content review/approval schemes" in the SAVE and PMA programs as well as Section 30-50-10(L), the plaintiffs have not been denied approval pursuant to these procedures and, therefore, lack standing to challenge them.

relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We likewise reject the plaintiffs' conclusory attempt to allege violations of Virginia Administrative Code Title 24, Sections 30-50-10(L) and 30-151-670, without plausible supporting factual allegations. *Id.* at 678-79.

## III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*